**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | |
|---|---|
| DR. STEVEN A. GUTTENBERG and DOCTORS GUTTENBERG AND EMERY, P.C.,<br><br>                              **Plaintiffs,**<br><br>        **v.**<br><br>DR. ROBERT W. EMERY,<br><br>                              **Defendant.** | **Civil Action No.: 1:08-cv-00085**<br>**Honorable John D. Bates** |

## MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL

Defendant Robert W. Emery ("Dr. Emery"), pursuant to Rules 1.7, 1.9 and 1.13 of the D.C. Rules of Professional Conduct, hereby moves this Court to enter an order disqualifying Geoffrey P. Gitner and Richard T. Tomar from continuing to serve as counsel for Plaintiffs Steven A. Guttenberg ("Dr. Guttenberg") and Drs. Emery and Guttenberg, P.C. ("the Company") in this matter. In support of this Motion, Dr. Emery states as follows:

1.      This lawsuit arises out of disputes between the two equal, 50-50 shareholders and directors of the Company, a professional corporation engaged in the practice of oral and maxillofacial surgery.

2.      Counsel of record for both of the named plaintiffs, Dr. Guttenberg and the Company, are Geoffrey P. Gitner and Richard T. Tomar.

3.      Pursuant to Rule 1.13(a) of the D.C. Rules of Professional Conduct, as well as D.C. Ethics Committee Opinion 216, which applies Rule 1.13(a), neither Mr. Gitner nor Mr. Tomar may represent the Company in this matter because: (a) they are ethically prohibited

from taking sides, on behalf of the Company, in an intra-corporate dispute between two 50-50 shareholders and, instead, are ethically required to remain neutral; and (b) the Company has not properly authorized either of them to advocate any position on its behalf.

4.     Additionally, pursuant to Rule 1.13(d) of the D.C. Rules of Professional Conduct, Mr. Gitner and Mr. Tomar cannot simultaneously represent both the Company and Dr. Guttenberg because they never sought, let alone obtained, the informed consent of the Company (through Dr. Emery) to engage in such simultaneous representation.

5.     Finally, pursuant to Rule 1.9 of the D.C. Rules of Professional Conduct, Mr. Gitner may not represent Dr. Guttenberg against Dr. Emery in this matter because he previously represented the Company – and thus, effectively, Dr. Emery – in a previous matter that is substantially related to this matter.

6.     Prior to the initiation of this lawsuit, Dr. Emery repeatedly urged Mr. Gitner to refrain from such simultaneous and successive representation.  He also repeatedly registered an objection to Mr. Gitner and Mr. Tomar purporting to represent the Company in disputes between himself and Dr. Guttenberg.  Regrettably, Messrs. Gitner and Tomar disregarded Dr. Emery's objections and, instead, proceeded to file a complaint and extensive litigation papers against him.

WHEREFORE, because Dr. Emery does not consent to, and is prejudiced by, Mr. Gitner and Mr. Tomar's (a) representation of the Company and (b) simultaneous representation of the Company and Dr. Guttenberg, and because  Dr. Emery does not consent to, and is prejudiced by, Mr. Gitner's successive representation of first the Company and then Dr. Guttenberg against Dr. Emery in matters that are substantially related to one another, Dr. Emery respectfully submits that, under the D.C. Rules of Professional Conduct, Messrs. Gitner and Tomar should be disqualified from acting as plaintiffs' counsel in this case.

For the Court's convenience, a proposed Order is submitted herewith.

Respectfully submitted,


/s/ Brian L. Schwalb
Brian L. Schwalb (D.C. Bar No. 428551)
Seth A. Rosenthal (D.C. Bar No. 482586)
Ari Rothman (D.C. Bar No. 481334)
VENABLE  LLP
575 7th Street, N.W.
Washington, DC  20004
Telephone:  (202) 344-4000
Facsimile:   (202) 344-8300

*Counsel for Dr. Robert W. Emery*

Dated:  February 6, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| **DR. STEVEN A. GUTTENBERG and**<br>**DOCTORS GUTTENBERG AND EMERY,**<br>**P.C.,**<br><br>　　　　　　　　　**Plaintiffs,**<br><br>　　　　**v.**<br><br>**DR. ROBERT W. EMERY,**<br><br>　　　　　　　　　**Defendant.** | **Civil Action No.: 1:08-cv-00085**<br>**Honorable John D. Bates** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION TO DISQUALIFY PLAINTIFFS' COUNSEL**

In further support of his Motion to Disqualify Plaintiffs' Counsel, Plaintiff Robert W.
Emery ("Dr. Emery") states as follows:

**INTRODUCTION**

The filing of this lawsuit, accompanied with a demand for immediate injunctive relief,
reflects the culmination of the retaliatory measures Dr. Guttenberg has taken against Dr. Emery
in response to Dr. Emery's efforts to protect the Company (and its employees and patients) from
Dr. Guttenberg's pattern of inappropriate sexual behavior and harassment. Like all of the other
tactics Dr. Guttenberg has utilized to twist the truth since mid-2007, when Dr. Emery made clear
that the Company had to address, in a professional and constructive way, Dr. Guttenberg's
pattern of sexual misconduct, the Complaint was a transparently pre-emptive strike – in the midst
of mediation, no less – designed to create a false first impression that it is Dr. Emery, rather than
Dr. Guttenberg, who has engaged in wrongdoing. Consistent with how Dr. Guttenberg has
repeatedly overridden Dr. Emery's co-equal interests and forced Dr. Emery out of the practice

through his own improprieties, Dr. Guttenberg's unilateral retention of Messrs. Gitner and Tomar to represent, simultaneously, both the Company and himself in this litigation reflects a disregard for Dr. Emery's interests and rights as a 50% owner of the Company.

In his opposition to Dr. Guttenberg's injunction papers, Dr. Emery will address in greater detail Dr. Guttenberg's pattern of misconduct. For purposes of this Motion to Disqualify, however, Dr. Emery focuses only on the facts necessary to understand why the ethical prohibitions set forth in the D.C. Rules of Professional Conduct prevent Messrs. Gitner and Tomar from representing the Company and Dr. Guttenberg in this case.

**First**, under Rule 1.13(a) of the D.C. Rules of Professional Conduct, Mr. Gitner and Mr. Tomar had no rightful authority to file this lawsuit on behalf of the Company or to represent the Company in the first place. Dr. Emery, as a 50% owner and director, never consented to the retention of Mr. Gitner and Mr. Tomar, or to the filing of this litigation, and Dr. Guttenberg had no authority to purport to unilaterally act on behalf of the Company. Moreover, applying Rule 1.13(a), D.C. Ethics Committee Opinion 216 warns that a corporation's lawyer cannot take sides, but rather is required to remain neutral, in a dispute like this one between the company's shareholders. Messrs. Gitner and Tomar obviously have not remained neutral.

**Second**, Mr. Gitner and Mr. Tomar's _simultaneous_ representation of the Company and Dr. Guttenberg is impermissible under D.C. Rules of Professional Conduct 1.7 and 1.13(d). Mr. Gitner and Mr. Tomar did not, as required by those Rules, obtain Dr. Emery's informed consent to engage in such simultaneous representation.

**Third**, under D.C. Rule of Professional Conduct 1.9, Mr. Gitner may not represent Dr. Guttenberg in this matter, in which he is adverse to Dr. Emery, because Mr. Gitner previously represented the Company – and thus, in effect, Dr. Emery – in a substantially related

matter.  In particular, Mr. Gitner was involved in defending the claim that former Company employee Kathy Keyes made in mid-2007 against the Company and Dr. Guttenberg, in which she complained that Dr. Guttenberg sexually harassed her. Mr. Gitner was involved in negotiating a settlement of Ms. Keyes' claims, as well as in the termination of her employment with the Company.  The Kathy Keyes affair, Dr. Emery's and Dr. Guttenberg's responses to it, and Dr. Guttenberg's refusal to permit the Company to address his pattern of sexual misconduct (of which the Keyes affair was but the latest in a series of improprieties) are what led to the parties' present disagreements and deadlock.  Because the Keyes incident is "the same" as, or "substantially related" to, the present dispute, Mr. Gitner cannot ethically represent Dr. Guttenberg against Dr. Emery.

## **FACTUAL BACKGROUND**

Dr. Guttenberg and Dr. Emery are both well-known, well-established oral surgeons in the District of Columbia.  The Company is a professional corporation of which Dr. Emery and Dr. Guttenberg each own an equal half of the shares.  Dr. Emery and Dr. Guttenberg are the Company's only two directors. They are both also personal guarantors of the Company's office lease. The Company has no by-laws.  While Dr. Guttenberg has purported to act as the Company's president, the only board of directors' resolution authorizing him to do so occurred in July 1990.  It expressly stated that his term would end on July 30, 1991.  The same resolution appointed Dr. Emery as Vice President and Secretary.  *See* Unanimous Consent of Directors in Lieu of Special Meeting, attached as Ex. 6 to Plaintiffs' Motion for Temporary Restraining Order.

In the spring of 2007, it became evident that Dr. Guttenberg was having an extramarital affair with an employee of the Company, Kathy Keyes.  Numerous Company employees

observed evidence of the affair, including Ms. Keyes storming out of Dr. Guttenberg's office one day after Dr. Guttenberg had apparently tried to discipline her, where she shouted words to the effect of: "first you f*** me, then you fire me." Ms. Keyes was not fired, but she subsequently admitted to Dr. Emery that she had been having an affair with Dr. Guttenberg. Ms. Keyes then retained a lawyer who sent a letter to the Company threatening to bring claims of sexual harassment.

Dr. Emery approached Dr. Guttenberg about the Keyes affair and the demand letter from her lawyer. Dr. Guttenberg apologized. When Dr. Emery asked what had happened, Dr. Guttenberg responded: "you don't want to know." Dr. Emery stated that the Company had to take measures to protect against a recurrence of such misconduct, and Dr. Guttenberg agreed. Dr. Emery retained counsel, Bruce Kauffman, to help draft an appropriate written agreement that would hopefully prevent Dr. Guttenberg from engaging in such misconduct ever again, and that would provide tangible and constructive consequences if he did.

Around the same time, the Company brought in and consulted with Mr. Gitner on the Keyes matter, as Dr. Guttenberg concedes in his Supplemental Declaration appended to his Memorandum in Support of a temporary restraining order. *See* Ex. 7 to Memorandum, ¶ 5, at 2 (referring to "our litigation counsel" in the Keyes matter). Mr. Gitner had done periodic legal work for the Company over the years, including drafting the initial Shareholders Agreement and employment agreements. On behalf of the Company, Mr. Gitner and the Company's insurer settled the Keyes matter short of litigation in late July 2007. The settlement involved Ms. Keyes terminating her employment with the Company and executing a release in exchange for payment of a confidential and substantial sum of money.

4

Prior to the resolution of the Keyes matter, Mr. Kauffman prepared an amendment to the Shareholders Agreement that provided, among other things, that if in the future a court or administrative agency were to determine that Dr. Guttenberg engaged in sexual harassment, or if a claim alleging that he did so were settled and paid out, then he would convey his interests in the Company, for value, to Dr. Emery and cease practicing.  Dr. Emery showed the proposed amendment to Dr. Guttenberg, who said that he agreed with and would sign it, except that it needed to be in a separate document from the Shareholders Agreement.  Dr. Guttenberg then brought in Mr. Gitner to represent him personally in connection with the proposed agreement. Upon Mr. Gitner's advice, Dr. Guttenberg told Dr. Emery that, because the agreement might be "discoverable" in any lawsuit filed by Kathy Keyes, he was not willing to sign it until the Keyes matter was settled.  Dr. Emery, taking Dr. Guttenberg at his word, agreed to wait.

At the time Dr. Guttenberg brought in Mr. Gitner to represent him individually in connection with the amendment to the Shareholders Agreement, Mr. Gitner was still representing both the Company and Dr. Guttenberg in the Keyes matter.  Mr. Gitner never explained to Dr. Emery the potential perils of his simultaneously representing both the Company and Dr. Guttenberg.  Nor did he ever obtain Dr. Emery's consent to do so.

Despite his previous oral assurances to Dr. Emery, Dr. Guttenberg refused to sign the amendment to the Shareholders Agreement, even after the Keyes claims were settled in late July 2007. Over the course of the rest of the summer, Mr. Gitner and Mr. Kauffman discussed and negotiated changes in the draft agreement, with Dr. Emery making concessions in the interest of getting an agreement executed.  During the course of these discussions, even after the Keyes matter settled, it became clear that Mr. Gitner was representing both Dr. Guttenberg and the Company.  For instance, in a letter dated August 9, 2007, Mr. Gitner not only rejected a draft of

the aforementioned written agreement on behalf of Dr. Guttenberg, but admonished Dr. Emery for "threaten[ing] action that could be considered adverse *to the Corporation*" and warned that Dr. Emery, "under his Employment Agreement [*with the Corporation*] … would be considered in breach should he take any actions that are not in the best interests of *the Corporation*." *See* **Ex. A** (August 9, 2007 letter from Geoffrey Gitner to Bruce Kauffman) (emphasis added).

The discussions regarding the amendment to the Shareholders Agreement ultimately proved fruitless. As of the end of August 2007, Dr. Guttenberg, represented by Mr. Gitner, remained unwilling to enter into any agreement that would adequately protect the Company and Dr. Emery in the event of future sexual misconduct by Dr. Guttenberg.

Soon after discussions broke down, Dr. Emery discovered additional, extremely troubling information about Dr. Guttenberg's history that exacerbated his concerns about the risks that Dr. Guttenberg posed to the Company, its employees and its patients. Together with Dr. Guttenberg's repeated inappropriate sexual behavior at the Company and Dr. Guttenberg's steadfast refusal to execute an agreement that would protect the Company against any future misconduct, the discovery of this previously undisclosed information made Dr. Emery realize that he could no longer ethically and professionally continue to work in the same practice as Dr. Guttenberg.

Just before learning about the previously undisclosed information regarding Dr. Guttenberg's history, Dr. Emery retained Venable LLP. Venable soon discovered that the Company's charter had lapsed, and that the Company had been dissolved, many years earlier as a result of the failure to file annual reports with the District of Columbia Department of Consumer and Regulatory Affairs. In a telephone conversation that occurred on September 25, 2007, Dr. Emery's Venable counsel, Joe A. Shull, made clear to Mr. Gitner that Dr. Emery could no

longer maintain the status quo and that Dr. Emery and Dr. Guttenberg should begin discussing the separation of their practices.  During the conversation, Mr. Gitner indicated that he had been and was continuing to represent both the Company and Dr. Guttenberg.  Mr. Shull raised concerns about Mr. Gitner's continued simultaneous representation of the Company and Dr. Guttenberg, noting that it was ethically impermissible and could unfairly prejudice the interests of Dr. Emery, a 50% co-owner of the Company.  Mr. Gitner disagreed, insisting that there was no ethical bar to his simultaneous representation.

The next day, Mr. Shull wrote an email to Mr. Gitner confirming Dr. Emery's position that (i) Mr. Gitner could not ethically continue to simultaneously represent the Company and Dr. Guttenberg, and (ii) as corporate counsel, D.C. Ethics Committee Opinion 216 prohibited Mr. Gitner from taking sides in any ownership-related dispute between Dr. Emery and Dr. Guttenberg.  A copy of Mr. Shull's September 26, 2007 e-mail is attached hereto as **Ex. B**.  Mr. Shull expressly pointed out that "given the serious allegations of wrongdoing against Dr. Guttenberg, there can be no dispute that his interests and the interests of the corporation are in conflict with one another."  *Id*.  In addition, Mr. Shull, on behalf of Dr. Emery, requested that Mr. Gitner, as the Company's counsel, provide Dr. Emery "copies of all of your correspondence and notes, as well as all timesheets and billing statements, with respect to the services that you and your firm(s) have performed for the corporation pertaining to complaints of sexual harassment, and with respect to advice that you have been providing regarding the corporation's governance, structure and future business operations."  *Id*.  Although Dr. Emery, as a 50% co-

owner and director of the Company, had and continues to have every right to such information and documents, to date, Mr. Gitner has ignored the request.[1]

On September 28, 2007, Dr. Emery's counsel sent another e-mail to Mr. Gitner advising him as follows:

> As you know, we continue to believe that a conflict of interest precludes you from representing either the corporation or Dr. Guttenberg. You have made clear that you disagree, and that you intend to continue representing both, over Dr. Emery's objections. I wish you would reconsider that position since it not only unfairly prejudices Dr. Emery and his 50% interest in the company, but it also makes it much more difficult to try to work out a business like, rational resolution of the difficulties the business is confronting.

**Ex. C** (Sept. 28, 2007 email from Joe A. Shull to Geoff P. Gitner). Dr. Emery's counsel made the same point several weeks later, writing, "It bears repeating that we do not see how, after representing the company, Doctors Guttenberg and Emery, P.C., you can now represent Dr. Guttenberg against Dr. Emery in matters arising out of the PC's affairs." **Ex. D** (Oct. 16, 2007 email from Brian L. Schwalb to Geoff P. Gitner).

On October 4, 2007, perhaps in recognition of his conflicting loyalties, Mr. Gitner wrote that he had brought in separate counsel, Richard Tomar, purportedly to represent the Company in connection with the governance disputes between Dr. Emery and Dr. Guttenberg. **Ex. E**, at 2 (Oct. 4, 2007 letter from Geoffrey P. Gitner to Joe A. Shull). This was a unilateral decision, made by Dr. Guttenberg and/or Mr. Gitner on behalf of the Company, without Dr. Emery's approval. On October 18, 2007, at a meeting between the parties' counsel, Mr. Kauffman expressly advised Mr. Tomar that, as Company counsel, Mr. Tomar could not simultaneously represent the Company and take sides in the dispute between Dr. Guttenberg and Dr. Emery.

---

[1] Mr. Gitner's representation to the Court during the telephonic scheduling conference on February 1, 2008 that he had never been requested to provide documents and information to Dr. Emery is contradicted by the e-mail communications in September and October 2007.

Mr. Tomar has not heeded that admonition.  As has become evident over the past three months, Mr. Tomar represents not only the Company, but Dr. Guttenberg as well.  By the same token, Mr. Gitner has never discontinued representing the Company, despite unilaterally bringing in Mr. Tomar.  In other words, Mr. Gitner and Mr. Tomar each simultaneously represent the Company *and* Dr. Guttenberg, despite never having received Dr. Emery's informed consent to do so.  The Complaint and TRO papers make this perfectly clear: both Mr. Gitner and Mr. Tomar have signed those documents on behalf of *both* the Company and Dr. Guttenberg.

## ARGUMENT

### I.    MESSRS. GITNER AND TOMAR SHOULD BE DISQUALIFIED FROM REPRESENTING THE COMPANY IN THIS CASE.

#### A.    D.C. Rule of Prof. Conduct 1.13(a) Prohibits Mr. Gitner and Mr. Tomar from Representing the Company.

D.C. Rule of Professional Conduct 1.13(a) provides that a lawyer retained by a corporation "represents the [corporation] through its duly authorized constituents."  D.C. Ethics Committee Opinion 216 addresses the question of whether, under Rule 1.13(a), a lawyer representing a closely held corporation, whose shares are owned equally by two 50% co-owners, may represent the corporation in an action against one of the 50% owners.  The opinion cautions that, even if the corporation has a constituent who is duly authorized to act on its behalf (which, as shown below, is **not** the case here), and even if that constituent authorizes the lawyer to pursue a suit for the corporation against the other constituent, the lawyer:

> must continue to recognize that the interests of the corporation must be paramount and that ___he must take care to remain neutral with respect to the disputes between the present shareholders___ ...
> *See* ABA Opinion 86 (1932) ("In acting as the corporation's legal adviser [an attorney] must refrain from taking part in any controversies or factual differences which may exist among stockholders as to its control"), quoted with approval in *Financial*

> *General Bankshares, Inc. v. Metzger*, 523 F.Supp. 744, 765
> (D.D.C. 1981).

D.C. Ethics Comm. Op. 216 (1991) (emphasis added). *See also Griva v. Davison,* 637 A.2d 830, 840 n.10 (D.C. 1994). In other words, where maintaining suit by the corporation against one of the corporation's 50% owners entails the corporation's lawyer taking sides in a dispute between both 50% owners, the lawyer may not undertake the representation.

In this case, and in the disputes leading up to the filing of this case, Mr. Gitner and Mr. Tomar have been doing precisely what Rule 1.13(a) and Opinion 216 forbid. That is, purportedly on behalf of the Company, they have been taking the side of one 50% co-owner (Dr. Guttenberg) against the other 50% co-owner (Dr. Emery) in a management dispute between the two over control of the Company. In fact, despite purporting to represent the Company's interests, neither Mr. Tomar nor Mr. Gitner has ever met with Dr. Emery (or, to Dr. Emery's knowledge, any other Company employee) to obtain a full understanding of Dr. Guttenberg's history of sexual misconduct, which has plainly put the Company in harm's way. Rather, they have sought only to protect Dr. Guttenberg's personal interests. Among other things, they have baldly asserted that the overwhelming evidence of Dr. Guttenberg's sexual misconduct is frivolous, they have rebuffed Dr. Emery's repeated requests to meet with Dr. Guttenberg to work through numerous management issues, and they have taken unilateral actions on behalf of Dr. Guttenberg over Dr. Emery's express objections, including purporting to terminate Dr. Emery's employment so as to enable Dr. Guttenberg to acquire Dr. Emery's ownership interest in the Company.

Moreover, unlike the circumstances presented in Opinion 216 (where, although no longer being an owner, the corporation's president actually retained the power to authorize the corporation's lawyer to maintain suit), Mr. Gitner and Mr. Tomar are taking sides despite the fact

that they have never been given authority by any "duly authorized [Company] constituent," D.C. Rule of Prof. Conduct 1.13(a), to do so. Dr. Guttenberg simply does not have the power to unilaterally authorize Mr. Gitner and Mr. Tomar to bring this lawsuit on the Company's behalf. Even if he did – which, as demonstrated below, he did not – Messrs. Gitner and Tomar are not ethically permitted, as purported counsel for the Company, to advocate for one shareholder against the other. Accordingly, Mr. Gitner and Mr. Tomar should be disqualified from representing the Company in this case.

### B.    The Company Has Never Authorized Mr. Gitner and Mr. Tomar to Represent It.

Just as fundamentally, Mr. Gitner and Mr. Tomar must be disqualified from representing the Company because they simply are not authorized to do so in *any* matter. It is axiomatic that a corporation is managed by its board of directors. D.C. Code § 29-101.32(a) ("[t]he business and affairs of a corporation shall be managed by a board of directors"). While a board of directors may, through by-laws, delegate to officers the routine, day-to-day management of a corporation, by-laws are not required, and here there are no by-laws. In the absence of by-laws, especially those empowering Dr. Guttenberg to unilaterally retain counsel to initiate litigation, Mr. Gitner and Mr. Tomar may represent the Company here only if Dr. Emery and Dr. Guttenberg, as the sole shareholders and directors, were jointly to agree to retain them for the purpose of filing this suit. *See* D.C. Code § 29-101.136 ("[a]ny action required or permitted to be taken at a meeting of the shareholders of a corporation or of the board of directors… may be taken without a meeting if a consent in writing setting forth the action so taken shall be signed *by all of the shareholders* entitled to vote with respect to the subject matter thereof, or *by all of the members* of the board") (emphasis added). This did not occur. Dr. Emery has never agreed to

11

hire, or to authorize Dr. Guttenberg to hire, Mr. Gitner or Mr. Tomar to initiate this action on behalf of the Company or to represent the Company in the underlying dispute.

Nor can Messrs. Gitner and Tomar circumvent the absence of corporate authority by arguing that Dr. Guttenberg, as president, had the power to retain them unilaterally.  In the District of Columbia, an officer of a corporation, including the president, has no authority to act on the corporation's behalf unless specifically authorized to do so.  *See* D.C. Code § 29-101.43(b) (1981); *In re Wolensky's Ltd. P'ship*, 163 B.R. 615, 620 (Bankr. D.D.C. 1993), *citing People v. Jasman*, 284 N.W.2d 496 (Mich. Ct. App. 1979) (stating that a "corporate president is not presumed to have power to act on behalf of the corporation").  While there exists some authority saying that the president of a corporation may have the implied authority to act on behalf of a corporation in regard to matters that are within the ordinary course of the corporation's business (18B Am. Jur. 2d *Corporations* § 1329),[2] firing an equal 50% shareholder, officer, director and office lease guarantor is certainly not ordinary business for a closely-held corporation and thus is not something that can be lawfully accomplished without board of directors' approval.  *See* D.C. Code § 29-101.44 (1981) ("Any officer or agent elected or appointed by the board of directors may be removed by the board of directors.").  Nor is initiating a lawsuit against an equal 50% shareholder, officer and director an action within the ordinary course of a corporation's business. *See Glisson Coker, Inc. v. Coker*, 581 S.E.2d 303 (Ga. Ct. App. 2003) (finding that corporation's president and 50% equal shareholder lacked authority to pursue legal action against the vice-president, the other 50% equal shareholder, because it was not part of the corporation's ordinary business); *Stone v. Frederick*, 245 A.D.2d 742 (N.Y. App. Div. 1997) (holding that "where there

---

[2]     In their Motion for a Temporary Restraining Order, Emergency Status and Scheduling Conference and Preliminary Injunction, Plaintiffs cite to 18B Am. Jur. 2d *Corporations* § 3129.  Motion at 16.  For the purpose of responding to Plaintiffs' legal arguments in this Opposition, Defendant assumes that Plaintiffs intended to cite to § 1329, because § 3129 does not exist.

are only two stockholders, each with a 50% share, an action cannot be maintained in name of corporation by one stockholder [the president] against another [the vice-president] with an equal interest and degree of control over corporate affairs").

Simply put, the Company could not properly retain either Mr. Gitner or Mr. Tomar, or authorize either of them to file litigation papers on its behalf, unless both Dr. Emery and Dr. Guttenberg consented to such action. And Dr. Emery has not given his consent. He never approved the hiring of Mr. Tomar as Company counsel and never subsequently ratified Dr. Guttenberg's unilateral decision to hire him. Moreover, Dr. Emery has specifically objected to Mr. Gitner's representation of the Company since September 2007. *See* **Exs. B, C and D**. Accordingly, Mr. Gitner and Mr. Tomar are presently representing (or purporting to represent) the Company despite never properly having been given the power to undertake such representation by the Company's "duly authorized constituents," as required by Rule 1.13(a).

## II. MR. GITNER AND MR. TOMAR ARE PROHIBITED FROM SIMULTANEOUSLY REPRESENTING THE COMPANY AND DR. GUTTENBERG.

### A. Mr. Gitner and Mr. Tomar Did Not Obtain Dr. Emery's Informed Consent for Dual Representation.

D.C. Rule of Professional Conduct 1.13 provides that a lawyer representing an organization may also represent one of the organization's constituents "subject to Rule 1.7," which governs conflicts of interest. D.C. Rule of Prof. Conduct 1.13(d). Rule 1.7, in turn, says that if a potential conflict exists – that is, if, *inter alia,* representation of one client "will be or is likely to be adversely affected by representation of another client" – the lawyer may not undertake simultaneous representation unless he (i) fully discloses "the nature of the possible conflict and possible adverse consequences of such representation," and (ii) obtains "informed consent" for the representation from "each potentially affected client." D.C. Rules of Prof.

13

Conduct 1.7(b) and (c).  *See also* D.C. Rules of Prof. Conduct 1.7, Comment to 2007 Revision, ¶ 7 ("disclosure and informed consent are required before assuming a representation if there is any reason to doubt the lawyer's ability to provide wholehearted and zealous representation of a client …"); *see also Griva v. Davison*, 637 A.2d at 844-46.  Of particular importance here, Rule 1.13(d) goes on to say that, if Rule 1.7 requires the organization's informed consent to dual representation, "the consent shall be given by an appropriate official of the organization ***other than the individual who is to be represented***, or by the shareholders."  D.C. Rule of Prof. Conduct 1.13(d) (emphasis added).

In this case, Mr. Gitner and Mr. Tomar have not received, as required, the informed consent of each of their purported clients – the Company and Dr. Guttenberg – to simultaneously represent both of them because the Company, through Dr. Emery, has never provided such consent.   Such consent is required because, under the terms of Rule 1.7, Mr. Gitner and Mr. Tomar are plainly operating under a potential conflict of interest in representing both the Company and Dr. Guttenberg.  Indeed, the potential conflict has already ripened into an actual conflict on several occasions.  For example, in the wake of the Keyes matter, Dr. Guttenberg, under Mr. Gitner's guidance, refused to sign any agreement that would protect the Company in the event of future sexual misconduct by Dr. Guttenberg.  Because of the substantial risk of exposure that Dr. Guttenberg's history of inappropriate behavior has created for the Company, such an agreement is self-evidently in the Company's interests.  At the same time, such an agreement, which would contain provisions that penalize Dr. Guttenberg in the event of future misconduct, might not be in Dr. Guttenberg's interests.  Faced with this conflict, Mr. Gitner sided with Dr. Guttenberg, to the detriment of the Company.

Similarly, Dr. Emery has requested from Mr. Gitner "copies of all of your correspondence and notes, as well as all timesheets and billing statements, with respect to the services that you and your firm(s) have performed for the corporation pertaining to complaints of sexual harassment, and with respect to advice that you have been providing regarding the corporation's governance, structure and future business operations." **Ex. B**. Despite the fact that, as a 50% co-owner of the Company, Dr. Emery has the absolute right – and, as a director, the duty – to obtain such records, neither Mr. Gitner nor Mr. Tomar, as Company counsel, ever provided them. That is almost certainly because doing so might well reveal information adverse to the interests of Mr. Gitner and Mr. Tomar's other client, Dr. Guttenberg.[3]

Faced with these conflicts, neither Mr. Gitner nor Mr. Tomar has done what Rule 1.13(d) expressly requires them to do: they have not obtained informed consent to dual representation of the Company and Dr. Guttenberg from "an appropriate official of the [Company] ***other than the individual who is to be represented***, or by the shareholders," *i.e.*, other than from Dr. Guttenberg. D.C. Rule of Prof. Conduct 1.13(d). More specifically, they have not, as required by Rules 1.7(c) and 1.13(d), explained the perils of dual representation to Dr. Emery, *see Griva v. Davison*, 637 A.2d at 845, and they have not, as required, obtained Dr. Emery's informed consent to such dual representation. *See id.* at 845-46. In fact, Dr. Emery has specifically objected to Mr. Gitner's simultaneous representation of the Company and Dr. Guttenberg, saying, *inter alia*, that it "unfairly prejudices [him] and his 50% interest in the Company." **Ex. C**. Dr. Emery also never approved Mr. Tomar's dual representation of the Company and Dr. Guttenberg, which was evident from the start (when Dr. Guttenberg hired Mr.

---

[3]    There are numerous other situations in which the Company's interests potentially run headlong into Dr. Guttenberg's. This lawsuit is a prime example. While Dr. Guttenberg presumably believes that it is in his own interests to maintain this suit, it is far from clear that it is in the Company's interests, and Dr. Emery, the Company's other 50% owner, plainly believes that it is not.

Tomar unilaterally), became even clearer during mediation, and crystallized when Mr. Tomar signed the lawsuit on behalf of both the Company and Dr. Guttenberg.

Because Mr. Gitner and Mr. Tomar never received consent to proceed with simultaneous representation of the Company and Dr. Guttenberg, neither Mr. Gitner nor Mr. Tomar may simultaneously represent the Company and Dr. Guttenberg in this proceeding. Both should be disqualified. *See, e.g., Griva v. Davison,* 637 A.2d at 847 ("appropriate sanctions for violations of the Code include attorney disqualification"); *Dunton v. County of Suffolk*, 729 F.2d 903, 907-08 (2d Cir. 1984) (attorney representing parties with conflicting interests should have been disqualified).

### B. Even Dr. Emery's Informed Consent Would Not Have Been Sufficient to Authorize Mr. Gitner and Mr. Tomar's Simultaneous Representation of the Company and Dr. Guttenberg.

Even if Mr. Gitner and Mr. Tomar had obtained the requisite consent to represent the Company and Dr. Guttenberg (which, again, they have not), they would nevertheless be disqualified from doing so because they cannot adequately represent the interests of both clients at the same time. *See, e.g., Griva v. Davison,* 637 A.2d at 838 ("Clearly, therefore, there can be situations where, despite full disclosure and consent, dual or multiple representation will be ethically proscribed.") What prevents them from undertaking dual representation here is the fact that they are prohibited from asserting, as they have been, that the interests of the owner they represent (Dr. Guttenberg), rather than the interests of the owner they do not represent (Dr. Emery), represent or dovetail with the interests of the entity they represent (the Company).

The D.C. Court of Appeals has ruled that "a lawyer for an entity cannot represent constituents of [the] entity … when it is unclear what constituents represent the interests of the entity and thus a dispute between constituents makes it impossible to know what the entity's

interests are."  *Griva v. Davison*, 637 A.2d at 840 n.10.  Yet, that is precisely the situation here.

Dr. Guttenberg has taken one position regarding the Company's affairs, and contends that his

position also reflects the best interests of the Company.  Dr. Emery, the Company's other 50%

owner and director, vehemently disagrees as to what is in the Company's best interests.  Because

neither owner has the authority to speak unilaterally for the Company, it is "unclear [which

owner] represent[s] the interests of the [Company] and … [the] dispute between [them] makes it

impossible to know what the [Company's] interests are."  *Id.*  As a result, even if Mr. Gitner and

Mr. Tomar had obtained informed consent to represent both the Company and Dr. Guttenberg,

they would not be permitted to do so.  Simply put, they may not assume, as they have been, that

taking the side of Dr. Guttenberg is consistent with the best interests of Company.  As the

Comment to Rule 1.7 says, "because the lawyer is required to be impartial between commonly

represented clients, representation of multiple clients is improper when it is unlikely that

impartiality can be maintained."  D.C. Rule of Prof. Conduct 1.7, Comment to 2007 Revision,

¶ 14.

## III.   MR. GITNER IS ETHICALLY PROHIBITED FROM REPRESENTING DR. GUTTENBERG.

D.C. Rule of Professional Conduct 1.9 provides that:

> A lawyer who has formerly represented a client in a matter shall
> not thereafter represent another person in the same or a
> substantially related matter in which that person's interests are
> materially adverse to the former client unless the former client
> gives informed consent.

Where disqualification is sought under this Rule, the moving party first "must show that an

attorney-client relationship formerly existed. …  Second, the party must show that the current

litigation is substantially related to the prior representation." *Derrickson v. Derrickson*, 541 A.2d

149 (D.C. 1988). *See also Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983).[4]

In this case, Dr. Emery has made both showings. Taking the second required showing

first, there is no question that this lawsuit is substantially related to a matter in which Mr. Gitner

previously represented the Company. As discussed above, Mr. Gitner represented the Company

from approximately May until late July 2007 in connection with Kathy Keyes' allegations of

sexual harassment. The very same matter is now at the heart of this litigation. In fact, it is the

genesis of the dispute. Ms. Keyes' claims are what prompted Dr. Emery to approach Dr.

Guttenberg about entering into an agreement that would protect the Company and Dr. Emery in

the event that Dr. Guttenberg did not reform his behavior. Dr. Guttenberg retaliated with hostile,

abusive measures, including, *inter alia*, false accusations of unprofessional practices, termination

threats and a purported termination letter. The existing lawsuit – a pre-emptive work of fiction

filed for strategic purposes in the midst of mediation – is the culmination of Dr. Guttenberg's

retaliatory actions. Significantly, the Complaint itself refers back to the event that triggered the

whole ordeal – the Keyes matter, in which Mr. Gitner represented the Company. *See* Complaint,

¶¶ 34-35. The same is true of the Supplemental Declaration Dr. Guttenberg submitted with his

memorandum in support of a temporary restraining order, which suggests the Keyes allegations

---

[4]    *Evans* and its progeny also technically require a showing that the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation. However, like the *Derrickson* case in the District of Columbia, the Second Circuit recognizes an *irrebuttable presumption* that this showing is made whenever the same lawyer participated in the prior and subsequent representation. *See, e.g., DeFazio v. Wallis,* 459 F.Supp.2d 159, 164-66 (N.D.N.Y. 2006). As the D.C. Court of Appeals held in *Derrickson*, "in order to grant a disqualification motion, a court should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case. … Rather, when a party seeking disqualification carries its burden of persuading the fact-finder that two matters, handled by the same counsel, are substantially related, there is an *irrebuttable presumption* that counsel received information during the first representation that is relevant to the second." *Derrickson v. Derrickson*, 541 A.2d at 151-52 (internal citations omitted) (emphasis in original).

to be the very *first* in a series of events that led to the dispute between himself and Dr. Emery. *See* Ex. 7 to Plaintiffs' Memorandum in Support of Temporary Restraining Order, ¶¶5-6, at 2-3.

As to the first required showing, the question is whether Mr. Gitner had an attorney-client relationship with Dr. Emery while representing the Company in the Keyes matter? For two independent reasons, the answer is "yes." First, because Dr. Emery, as a 50% equal owner and one of the two Company directors, had the ability "to keep [the Company] at odds with the wishes of or interests of [Dr. Guttenberg]" in the Keyes matter, Dr. Emery, "functionally, was a … client" of Mr. Gitner. *Griva v. Davison,* 637 A.2d at 840. In fact, the situation here closely resembles the situation in *Griva.* There, the D.C. Court of Appeals held that, in a three-person partnership that operated under a unanimous consent provision in the partnership agreement, the ability of one partner to deadlock the partnership obligated the Court to analyze the lawyers' ethical issues as if that partner were in fact *the partnership*, not simply an individual. *Id.* Although the issue regarding Mr. Gitner's current representation of Dr. Guttenberg against Dr. Emery is one of successive representation, rather than one of dual representation as in *Griva*, the same principle applies: because Dr. Emery had the power, as a co-equal owner and director of the Company, to veto single-handedly any position that Mr. Gitner might have advanced on the Company's behalf in the Keyes matter, Mr. Gitner must be seen, "functionally," as having represented Dr. Emery. *Cf.* D.C. Rule of Prof. Conduct 1.7, Comment to 2007 Revision, ¶ 23 (adopting "alter ego" test for determining whether, in cases involving potential adverse representation, organization's counsel effectively represents organizational constituent).

The second, independent reason why Mr. Gitner must be viewed as having represented Dr. Emery in the Keyes matter is that case law establishes that, in the special circumstances presented here, "the issue is not whether [Mr. Gitner's] relationship to [Dr. Emery] is in all

19

respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict involved in [Mr. Gitner's] role as plaintiff's counsel in this action." *Marshall v. State of New York Div. of State Police*, 952 F. Supp. 103, 108 (N.D.N.Y. 1997) (internal citations omitted). *Cf.* ABA Comm. On Ethics and Professional Responsibility, Formal Op. 361 (1991) ("In a small partnership, as with closely held corporations, it is more difficult to distinguish between representation of the entity and of its individual owners.")  Among the situations to which this rule applies are those where, as here, the attorney represents a small corporation owned 50-50 by two equal owners.   The District Court for the Southern District of New York has held:

> Although, in the ordinary corporate situation, corporate counsel does not necessarily become counsel for the corporation's shareholders and directors, … ***where … the corporation is a close corporation consisting of only two shareholders with equal interests in the corporation, it is indeed reasonable for each shareholder to believe that the corporate counsel is in effect his own individual attorney***.

*Rosman v. Shapiro*, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987) (internal citations omitted) (emphasis added).   In this kind of situation, for the purposes of the Rules of Professional Conduct, the attorney who formerly represented the corporation is considered to have been acting as counsel to the corporation's two, individual owners.  *See*  D.C. Rule of Prof. Conduct 1.7, Comment to 2007 Revision, ¶ 22.

Under the foregoing authorities, Dr. Emery must be presumed to have reasonably believed that Mr. Gitner represented his interests in the Keyes dispute, and Mr. Gitner must therefore be presumed to have been doing so.   These presumptions are bolstered by the facts. Mr. Gitner never advised Dr. Emery, during the course of the Keyes dispute or at any other point in time, that he did not represent Dr. Emery.  As a result, Dr. Emery had no reason to believe that

Mr. Gitner did not represent his interests, especially since, as a 50% owner of the Company, he reasonably presumed that the Company's interests *were* his own.  Having never been told that his interests might not be represented by Mr. Gitner, or might be adverse to Mr. Gitner's cause, Dr. Emery acted in accordance with this reasonable presumption:  he did not retain his own lawyer to represent him personally in the Keyes dispute, believing that Mr. Gitner was adequately representing his interests.[5]

For the purpose of evaluating Mr. Gitner's duties under the Rules of Professional Conduct, Mr. Gitner effectively represented Dr. Emery in the Keyes matter.  Under Rule 1.9, he cannot now turn around and represent Dr. Guttenberg against Dr. Emery in this "substantially related" case.

## **CONCLUSION**

For the foregoing reasons, Dr. Emery respectfully submits that Mr. Gitner and Mr. Tomar should be disqualified as counsel for the Plaintiffs in this case.

Respectfully submitted,

/s/   Brian L. Schwalb
Brian L. Schwalb (D.C. Bar No. 428551)
Seth A. Rosenthal (D.C. Bar No. 482586)
Ari Rothman (D.C. Bar No. 481334)
Venable LLP
575 7th Street, N.W.
Washington, DC  20004
Telephone:  (202) 344-4000
Facsimile:   (202) 344-8300

*Counsel for Dr. Robert W. Emery*

Dated:  February 6, 2008

---

[5]    Dr. Emery did not retain Bruce Kauffman to represent his interests in the Keyes dispute.  Rather, he retained Mr. Kauffman to advise him as to what steps he should take in the wake of Ms. Keyes' allegations, which, as noted above, were the latest in a long history of sexual improprieties.

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of February 2008, a copy of the foregoing was served

by the Court's electronic filing system upon the following:

Geoffrey P. Gitner, Esquire
Law Offices of Geoffrey P. Gitner
Watergate, Twelfth Floor
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037

Richard T. Tomar, Esquire
Karp, Frosh, Lapidus, Wigodsky & Norwind, P.A.
2273 Research Boulevard, Suite 200
Rockville, MD  20850

/s/   Brian L. Schwalb
Brian L. Schwalb

**Exhibit A**

# The Law Offices of Geoffrey P. Gitner

Watergate, Twelfth Floor
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Telephone 202.772.5926
Facsimile 202.572.8371

Licensed D.C., MD., VA.
ggitner@gitnerlaw.com

Maryland Office
Telephone 301.365.9477
Facsimile   301.365.9488

**VIA FACSIMILE**

August 9, 2007

Bruce Kauffman, Esq.
Kauffman & Forman
406 W. Pennsylvania Avenue
Towson, MD 21204

Re:  Drs. Guttenberg and Emery, P.C.

Dear Bruce:

We have reviewed the proposed amendment to the Drs. Emery and Guttenberg agreements, in particular the shareholder and employment agreements.

Please be advised the draft is unacceptable as proposed.  We will not accept any agreement unless it is mutual and only triggered by a judicial finding of liability.  As drafted, the proposal is unilateral and could be triggered on a mere "accusation."

As to mutuality, we believe it would be unproductive to get into accusations of past conduct by either of the parties.  This could only be detrimental to the practice and to the relationship of the principals.  As to the trigger, without the imprimatur of a judicial finding, neither party would be guaranteed minimal protection.  If you would be kind enough to send me an electronic version of the proposal in a "Word" format, I will make our revisions.  Please be further advised that we reserve the right to make additional revisions other than to mutuality and the triggering mechanism in our revisions.

In the interim, it appears that feelings may be running high between our clients.  We would hope that both sides would conduct themselves civilly and professionally.  However, please advise your client that he is bound by the confidentiality clause of the recent settlement agreement.  Also, it appears that Dr. Emery has threatened to take certain actions that could be considered adverse to the Corporation.  Please remind your client that under his Employment Agreement he would be considered in breach should he take any actions that are not in the best interests of the Corporation.

As stated above, our aim is to resolve this matter professionally and fairly and to maintain the Corporation's successful practice.  Please be assured that Dr. Guttenberg's interest is to maintain the practice and move forward in a positive manner.

Bruce Kauffman, Esq.
August 9, 2007
Page Two

Of course, should you wish to discuss this matter, please feel free to call me.

Very truly yours,

Geoffrey P. Gitner

cc: Dr. Steven Guttenberg

**Exhibit B**

## Rosenthal, Seth A.

**From:** Shull, Joe A.
**Sent:** Wednesday, September 26, 2007 8:45 PM
**To:** 'Gitner, Geoff P.'
**Subject:** Doctors Guttenberg and Emery P.C.

Dear Geoff,

This is a follow up to our telephone conversation yesterday.

1.    Reason for Not Reinstating the Company's Charter. You indicated yesterday that, in your view, reinstating the company's charter is a simple ministerial act and would be an appropriate thing for the corporation to do. I told you that we disagree. Among other things:

(a)    Drs. Guttenberg and Emery are both 50% shareholders and are the only directors of the company. Under D.C. law, the business and affairs of a corporation are to be managed by the board of directors. D.C. Code Section 29-101.32. Unless the board of directors votes to authorize reinstatement of the charter, it cannot be validly undertaken.

(b)    Dr. Guttenberg apparently holds himself out as President of the corporation. The President holds that position only by virtue of authority given to him by the Board of Directors, and in that position he has no authority to act contrary to the wishes of the Board, or to manage the business and affairs of the corporation except as is provided in the company's bylaws or by separate resolution of the directors. D.C. Code Section 29-101.43. In this case, no bylaws have, to our knowledge, ever been presented to or approved by the directors of the company, and as far as we can tell Dr. Guttenberg has no authority to carry on any activities by himself, and without Dr. Emery's consent, on behalf of the company.

(c)    There have been some serious and repeated allegations made with respect to the manner in which Dr. Guttenberg has conducted himself with respect to female employees, and this has resulted in an on-going dialogue between Drs. Guttenberg and Emery as to how to best conduct the business of the company in the future. Unfortunately, Dr. Guttenberg has not been willing to confront, in an honest and constructive way, the business problems and risks that his conduct has created for the corporation in the past. As a result, Dr. Emery is understandably concerned about continuing the business, and he certainly does not want to be locked into a business relationship with a colleague in which the business has exposure to future complaints of sexual harassment or similar misconduct. That was why I indicated to you, when we spoke, that among other things, the anti-compete language in the employment agreements needs to be addressed.

If the two directors and stockholders are not able to reach a mutually acceptable understanding with respect to office conduct and the consequences thereof, then the cessation of the company's affairs, not a perpetuation of them, is the proper course of action. The fact that the company has been dissolved will facilitate the ability of both doctors to either work out a mutually satisfactory arrangement for future office conduct or allow them to proceed separate and apart in their respective business endeavors.

2.    Your Role as Corporate and Individual Counsel. You indicated yesterday that you had been and were continuing to serve as counsel to both the corporation and to Dr. Guttenberg. I expressed the view that this was not permissible under the applicable rules of professional conduct, and could unfairly prejudice the interests of Dr. Emery, an equal shareholder and director of the corporation.

1/23/2008

(a)    On behalf of Dr. Emery, the co-owner and director of the company, we ask for copies of all of your correspondence and notes, as well as all timesheets and billing statements, with respect to the services that you and your firm(s) have performed for the corporation pertaining to complaints of sexual harassment, and with respect to advice that you have been providing regarding the corporation's governance, structure and future business operations.

(b)    Please take a look at D.C. Ethics Opinion 216: Representation of Closely Held Corporation in Action Against Corporate Shareholder, a link to which is here provided: http://www.dcbar.org/for_lawyers/ethics/legal_ethics/opinions/opinion216.cfm. It seems, at least to us, to caution that as counsel to the corporation you should not involve yourself in any dispute between the shareholders and directors of a closely held corporation as to the control of the business. Additionally, given the serious allegations of wrongdoing against Dr. Guttenberg, there can be no dispute that his interests and the interests of the corporation are in conflict with one another.

3.    Proposal for Resolution of the Situation. We suggest that a meeting be held among counsel and clients to discuss the present situation. If Dr. Guttenberg chooses to retain personal counsel, we ask that it not be someone who is obviously conflicted in the matter.

**Joe A. Shull**
Venable LLP
575 7th Street, N.W., Washington, D.C.  20004-1601
Tel: 202-344-4821;    Fax: 202-344-8300
www.venable.com;  Email: jashull@venable.com

**Exhibit C**

**Rosenthal, Seth A.**

| | |
|---|---|
| **From:** | Shull, Joe A. |
| **Sent:** | Friday, September 28, 2007 4:54 PM |
| **To:** | 'Gitner, Geoff P.' |
| **Subject:** | Doctors Guttenberg and Emery P.C. |

Dear Geoff,

This is directed to you in your stated capacity as counsel to Doctors Guttenberg and Emery P.C., as well as Dr. Guttenberg personally. As you know, we continue to believe that a conflict of interest precludes you from representing either the corporation or Dr. Guttenberg. You have made clear that you disagree, and that you intend to continue representing both, over Dr. Emery's objections. I wish you would reconsider that position since it not only unfairly prejudices Dr. Emery and his 50% interest in the company, but it also makes it much more difficult to try to work out a business like, rational resolution of the difficulties the business is confronting.

Unfortunately, it appears that Dr. Guttenberg does not fully appreciate the significance of the situation which confronts the company. We understand that yesterday, apparently in reaction to my communications with you, Dr. Guttenberg was extremely offensive and intimidating in his mannerisms in the office toward Dr. Emery, among other things:

- criticizing Dr. Emery for our bringing to your attention the issue with respect to the sexual harassment allegations that have been made against Dr. Guttenberg and how it impacts upon the business of the company.

- threatening, in retaliation, to 'dig up every piece of dirt' he could find on Dr. Emery and saying provocative and contentious things like 'I have people ready to testify.'

- dismissing the significance of the revocation of the company's charter as not a big thing, something easy to deal with, even though he has been directed by his co-owner and co-director not to take steps to reinstate the company's charter but rather to commence the process of winding up the affairs of the corporation as mandated by the applicable statute.

- maligning Dr. Emery to other office staff.

- instructing Dr. Emery to not enter Dr. Guttenberg's office, and

- accusing Dr. Emery of actively planning to open a new practice elsewhere when that is untrue.

This type of improper, unprofessional and intimidating behavior is a form of harassment that is not in the best interests of the practice or its patients, and that the company needs to address immediately. Dr. Guttenberg needs to be informed that he must act in a cordial and civilized manner in the office to all employees including to his business partner Dr. Emery. If Dr. Guttenberg cannot refrain from exhibiting a hostile, intimidating attitude toward Dr. Emery in the office setting, he should vacate the office premises until he can get control of his emotions.

There is an additional matter that is presently pending in the office pertaining to how to handle certain improper conduct of an employee, Donna Breeyear. This is a serious employee performance matter that requires careful attention by the company and the company should engage outside labor counsel to advise it with respect to the matter. I do not know if you have been brought up to speed on what is going on with Ms. Breeyear, but if you are being consulted with respect to this matter you would need to gather some information directly from Dr.

1

Emery in order to properly assess the situation and advise the company. There are differences between Dr. Guttenberg and Dr. Emery with respect to how to deal with this matter.

I sent the letter to you on Tuesday, and my follow up email on Wednesday, in the hopes that the parties could sit down and rationally explore a manner in which they could either continue the business of the company in compliance with law or otherwise sever the relationship in as amicable a manner as possible. Rather than responding in a professional, business-like way, Dr. Guttenberg has engaged in actions that produce a stressful and unprofessional atmosphere in the office. In addition, there are important business issues, including the one mentioned above about Ms. Breeyear, that need to be resolved. This only serves to confirm my belief that there needs to be a prompt sit down to address the issues that have been raised and move the matter to an acceptable conclusion.

Please advise us whether Dr. Guttenberg and his counsel (either you or independent counsel) is willing to do so.

**Joe A. Shull**
Venable LLP
575 7th Street, N.W., Washington, D.C. 20004-1601
Tel: 202-344-4821;   Fax: 202-344-8300
www.venable.com;  Email: jashull@venable.com

**Exhibit D**

## Rosenthal, Seth A.

**From:**    Schwalb, Brian L.

**Sent:**    Tuesday, October 16, 2007 5:00 PM

**To:**    'ggitner@gitnerlaw.com'

**Cc:**    Shull, Joe A.; Rosenthal, Seth A.; Schwalb, Brian L.; 'beklaw@comcast.net'

**Subject:** Drs. Guttenberg and Emery

FOR SETTLEMENT PURPOSES ONLY

NOT ADMISSIBLE IN EVIDENCE FOR ANY PURPOSE

Dear Geoff:

Because Joe Shull is out of the country, he asked that I respond to your letter of October 11.

It bears repeating that we do not see how, after representing the company, Doctors Guttenberg and Emery, PC, you can now represent Dr. Guttenberg against Dr. Emery in matters arising out of the PC's affairs. Nevertheless, in the interest of trying to resolve the current disputes between Dr. Emery and Dr. Guttenberg, and without waiving any positions, I want you and Dr. Guttenberg to know that we look forward to having a productive meeting at your offices on Thursday evening. We will be prepared to discuss the dissolution of the PC, and how our respective clients might move forward in a mutually agreeable, business-like way toward that end.

Without purporting to address every outstanding issue in this email, we do not believe that Dr. Guttenberg, as only one of the PC's directors, had the right to seek to unilaterally replace Dr. Emery as Secretary of the PC. Nor do we believe Dr. Guttenberg had the right to seek unilaterally to reinstate the corporation's charter after the charter had been revoked by DCRA, especially when Dr. Emery, a 50% shareholder and one of two directors, made clear that he did not authorize any such reinstatement. In our view, as a matter of law, Dr. Guttenberg's effort to reinstate the charter is void, the charter remains revoked, and the corporation is dissolved.

At this point, Dr. Emery has serious doubts about the wisdom of reinstating and perpetuating a practice with Dr. Guttenberg. As you know, the Keyes incident this past spring -- which was not the only alleged incident of its kind -- led Dr. Emery to insist on making certain changes so as to prevent similar incidents from recurring. Dr. Guttenberg, however, has been unwilling to constructively address the issue, resorting instead to abusive behavior toward Dr. Emery and disruptive conduct in the office. Moreover, in the past month, Dr. Emery has become aware of other troubling information about Dr. Guttenberg. This new information, coupled with the fact that Dr. Guttenberg recently took unilateral action over Dr. Emery's express objections, confirms Dr. Emery's judgment that the status quo is unacceptable and that the current management deadlock is, unfortunately, irremediable.

I look forward to meeting with you and Dr. Guttenberg in person this Thursday and to hopefully addressing the situation in a constructive and productive manner.

Brian L. Schwalb
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004
(202) 344-4356
blschwalb@venable.com

**Exhibit E**

# The Law Offices of Geoffrey P. Gitner

Licensed D.C., MD., VA.
ggitner@gitnerlaw.com

Watergate, Twelfth Floor
600 New Hampshire Avenue, N.W.
Washington, D.C. 20037
Telephone 202.772.5926
Facsimile 202.572.8371

Maryland Office
Telephone 301.365.9477
Facsimile   301.365.9488

**<u>VIA FACSIMILE</u>**

October 4, 2007

Joe A. Shull, Esq.
Venable LLP
575 7th Street, N.W.
Washington, D.C. 20004-1601

                    Drs. Guttenberg and Emery, PC.

Dear Mr. Shull:

        Please be advised as follows:

        First, the self-serving allegations in your emails are hereby rejected. Our failure to
respond to your diatribes should not be considered as a waiver of any position we may have on
any of the points you raise or the accuracy and truthfulness of those allegations.

        Second, I will not accept any formal communication on this matter by email. Your first
email, allegedly transmitting a pdf documents was not received by my office, because you forgot
to attach it to the email. In any case, transmission by email does not have adequate indicia of
reliability as does facsimile, hand-delivery or first class mail. Therefore, we will not accept
communications on this matter by email, and will feel under no obligation to respond to this
mode.

        Third, what your communications do make clear is that Dr. Emery has breached his
Shareholder and Employment agreements. When Dr. Emery signed these agreements in 1990 it
was clearly his intention to practice under the Professional Corporation umbrella, specifically the
Professional Corporation of Drs. Guttenberg and Emery. It now appears Dr. Emery has chosen
to unilaterally attempt to relieve himself from his contractual obligations through a pattern of
harassing Dr. Guttenberg with false and petty charges. Further, Dr. Emery has refused to fulfill
his obligations as the secretary of the corporation to protect the corporation and all its
shareholders from third party claims. This constitutes a clear breach of Dr. Emery's contractual
obligations under the Shareholder and Employment Agreements as well as the fiduciary duty he
owes the corporation.

        Fourth, as Dr. Emery's conduct indicates his actions are designed to relive himself of his
contractual obligations, which he has accepted since 1990, and for which he has accepted the

Joe A. Shull, Esq.
October 4, 2007
Page 2

benefits for the last seventeen years, Dr. Guttenberg as the President of the Corporation will not permit Emery's ploys to jeopardize the corporation and the business the corporation has built so diligently. Accordingly, Dr. Guttenberg has replaced Dr. Emery as Secretary of the Corporation and has reinstated the Charter.

Fifth, we understand that Dr. Emery has solicited certain of the Corporation's employees to leave the Corporation with him and sought or made arrangements (in violation of his covenant not to compete) to establish his own offices at 1145-19th Street, N.W. If Dr. Emery denies these allegations, then he should be prepared to provide us with his signed affidavit so stating under oath prior to our meeting.

Sixth, in order to assess whether Dr. Emery has committed additional breaches, please provide Dr. Emery's statement under oath of when he first discovered that the corporate charter had been revoked, and why he believed it was permissible to permit the Corporation and its shareholders to be exposed to third party claims.

Seventh, as Dr. Emery appears to have been planning his "surprise attack" for some, please be advised that Dr. Guttenberg is presently considering his legal options. In addition, based upon your argument that I may have a conflict in representing Dr. Guttenberg and the corporation, and despite my belief that the corporation and Dr. Guttenberg's interest are aligned, Dr. Guttenberg has retained corporate counsel, Richard Tomar, of the Karp Frosh law firm.

At such time as Guttenberg has had an opportunity to make an informed investigation of what his options are, and once Mr. Tomar has been able to inform himself of the issues, you will be informed and we will be prepared to meet. Given Dr. Guttenberg's full-time schedule, on behalf of the Corporation, and his planned out-of-town trip, which Emery has been aware for months we are hopeful to be able to formulate these position within the next week or two and meet with you and your client upon his return.

Eighth, your message of 10.42 pm, last evening demanding a meeting by today or tomorrow, under the circumstances cannot accommodated. Both Mr. Tomar and I have previous engagements. Further, in the one telephone call in which you and I spoke I asked you if you had a proposal you would like to present. I have received nothing. Lastly, you failed to identify any urgency or why Dr. Guttenberg's agreement to meet with Emery after his out of town trip wasn't sufficient and what is the reason for such immediacy.

Ninth, in the interim, until we do have the opportunity to meet, please advise your client to refrain from defamatory or derogatory remarks regarding Dr. Guttenberg's professional or personal life, attempting to gain access to Dr. Guttenberg's private office, and that it is our position that Dr. Emery continues to be bound by the covenants not to compete or solicit under the Shareholder and Employment agreements. Further, please remind him of his fiduciary duties

Joe A. Shull, Esq.
October 4, 2007
Page 3

to the corporation and his covenant of good faith and fair dealing under his agreements with Dr.
Guttenberg and the Corporation.

      Tenth, upon Dr. Guttenberg's return we will be amendable to meeting. Let me suggest
October 18,. 2007 at 5:00 p.m. at my offices at the Watergate. Prior to that time it would be
useful if you would send a written proposal of what it is your client wants and the requested
statements under oath.

Sincerely,

Geoffrey P. Gitner

cc: Eric Wang, Esq.
    Blank Rome, LLP
    Richard Tomar, Esq.
    Karp Frosh

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

DR. STEVEN A. GUTTENBERG and
DOCTORS GUTTENBERG AND EMERY,
P.C.,

                        **Plaintiffs,**

    **v.**

DR. ROBERT W. EMERY,

                       **Defendant.**

**Civil Action No.: 1:08-cv-00085**
**Honorable John D. Bates**

## <u>ORDER</u>

Having considered Defendant's Motion to Disqualify Plaintiffs' Counsel ("the Motion"),

the Memorandum in support of the Motion, and Plaintiffs' Response thereto, having reviewed the

file in this matter and being fully advised in the premises, it is hereby **ORDERED** that:

    1.      the Motion BE, and the same hereby IS, GRANTED;

    2.      pursuant to Rules 1.7, 1.9 and 1.13 of the D.C. Rules of Professional Conduct,

Geoffrey P. Gitner and Richard Tomar BE, and the same here by ARE DISQUALIFIED from

acting as counsel for either or both of the Plaintiffs in this matter.

    SO ORDERD this _____ day of _____, 2008.

_____
JOHN D. BATES
United States District Judge

Copies to:

Geoffrey P. Gitner, Esquire
Law Offices of Geoffrey P. Gitner
Watergate, Twelfth Floor
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037

Richard T. Tomar, Esquire
Karp, Frosh, Lapidus, Wigodsky & Norwind, P.A.
2273 Research Boulevard, Suite 200
Rockville, MD  20850

Brian L. Schwalb, Esquire
Seth A. Rosenthal, Esquire
Ari N. Rothman, Esquire
Venable LLP
575 7th Street, N.W.
Washington, D.C.  20004